IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| CHRISTIAN GREGORY, | ) | CASE NO. 1:17 CV 176 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | WILLIAM H. BAUGHMAN, JR. |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | **MEMORANDUM OPINION AND** |
| | ) | **ORDER** |
| Defendant. | ) | |

## Introduction

Before me[1] is an action by Christian Gregory under 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security denying his applications for disability insurance benefits and supplemental security income.[2] The Commissioner has answered[3] and filed the transcript of the administrative record.[4] Under my initial[5] and

---

[1] ECF # 13. The parties have consented to my exercise of jurisdiction.

[2] ECF # 1.

[3] ECF # 9.

[4] ECF # 10.

[5] ECF # 5.

procedural[6] orders, the parties have briefed their positions[7] and filed supplemental charts[8] and the fact sheet.[9] They have participated in a telephonic oral argument.[10]

## Facts

**A.  Background facts and decision of the Administrative Law Judge ("ALJ")**

Gregory who was 40 years old at the time of the administrative hearing,[11] did not graduate high school, but has his GED.[12] His past relevant employment history includes work as a tattoo artist.[13]

The ALJ, whose decision became the final decision of the Commissioner, found that Gregory had the following severe impairments: bipolar disorder, attention deficit disorder/attention deficit hyperactivity disorder, depression, anxiety disorder, personality disorder and bilateral carpel tunnel syndrom (20 CFR 404.1520(c) and 416.920(c).[14]

---

[6] ECF # 12.

[7] ECF # 26 (Commissioner's brief); ECF # 21 (Gregory's brief).

[8] ECF # 26-1 (Commissioner's charts); ECF # 21-1 (Gregory's charts).

[9] ECF # 20 (Gregory's fact sheet).

[10] ECF # 28.

[11] ECF # 20 at 1.

[12] *Id.*

[13] *Id.*

[14] ECF # 10, Transcript ("Tr.") at 116.

After concluding that the relevant impairments did not meet or equal a listing, the ALJ made the following finding regarding Gregory's residual functional capacity ("RFC"):

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he was limited to frequent use of foot controls bilaterally. He was limited to performing simple, routine and repetitive tasks but not at a production rate pace (e.g. assembly line work). He was limited to simple work-related decisions. He could occasionally interact with supervisors and coworkers. He could never interact with the public. He was limited to tolerating a few changes in a routine work setting.[15]

Given that residual functional capacity, the ALJ found Gregory incapable of performing his past relevant work as a tattoo artist.[16]

Based on an answer to a hypothetical question posed to the vocational expert at the hearing setting forth the residual functional capacity finding quoted above, the ALJ determined that a significant number of jobs existed locally and nationally that Gregory could perform.[17] The ALJ, therefore, found Gregory not under a disability.[18]

**B.    Issues on judicial review**

Gregory asks for reversal of the Commissioner's decision on the ground that it does not have the support of substantial evidence in the administrative record. Specifically, Gregory presents the following issues for judicial review:

---

[15] *Id.* at 119.

[16] *Id.* at 126.

[17] *Id.* at 127.

[18] *Id.* at 128.

- Whether the ALJ's decision lacks the support of substantial evidence, because the Judge did not properly assess the opinions of Dr. Deepak Raheja, plaintiff's treating physician.

- Whether the ALJ's decision is not supported by substantial evidence, in that the Judge did not find plaintiff to have a severe back impairment.[19]

For the reasons that follow, I will conclude that the ALJ's finding of no disability is supported by substantial evidence and, therefore, must be affirmed.

## Analysis

**A.  Standards of review**

*1.  Substantial evidence*

The Sixth Circuit in *Buxton v. Halter* reemphasized the standard of review applicable to decisions of the ALJs in disability cases:

> Congress has provided for federal court review of Social Security administrative decisions. 42 U.S.C. § 405(g). However, the scope of review is limited under 42 U.S.C. § 405(g): "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive...." In other words, on review of the Commissioner's decision that claimant is not totally disabled within the meaning of the Social Security Act, the only issue reviewable by this court is whether the decision is supported by substantial evidence. Substantial evidence is " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' "
>
> The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different

---

[19] ECF # 21 at 1.

-4-

conclusion. This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference.[20]

Viewed in the context of a jury trial, all that is necessary to affirm is that reasonable minds could reach different conclusions on the evidence. If such is the case, the Commissioner survives "a directed verdict" and wins.[21] The court may not disturb the Commissioner's findings, even if the preponderance of the evidence favors the claimant.[22]

I will review the findings of the ALJ at issue here consistent with that deferential standard.

*2.     Treating source rule*

The regulations of the Social Security Administration require the Commissioner to give more weight to opinions of treating sources than to those of non-treating sources under appropriate circumstances.

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.[23]

---

[20] *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) (citations omitted).

[21] *LeMaster v. Sec'y of Health & Human Servs.*, 802 F.2d 839, 840 (6th Cir. 1986); *Tucker v. Comm'r of Soc. Sec.*, No. 3:06CV403, 2008 WL 399573, at *6 (S.D. Ohio Feb. 12, 2008).

[22] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

[23] 20 C.F.R. § 404.1527(d)(2).

If such opinions are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record," then they must receive "controlling" weight.[24]

The ALJ has the ultimate responsibility for determining whether a claimant is disabled.[25] Conclusory statements by the treating source that the claimant is disabled are not entitled to deference under the regulation.[26]

The regulation does cover treating source opinions as to a claimant's exertional limitations and work-related capacity in light of those limitations.[27] Although the treating source's report need not contain all the supporting evidence to warrant the assignment of controlling weight to it,[28] nevertheless, it must be "well-supported by medically acceptable clinical and laboratory diagnostic techniques" to receive such weight.[29] In deciding if such supporting evidence exists, the Court will review the administrative record as a whole and may rely on evidence not cited by the ALJ.[30]

---

[24] *Id.*

[25] *Schuler v. Comm'r of Soc. Sec.*, 109 F. App'x 97, 101 (6th Cir. 2004).

[26] *Id.*

[27] *Swain v. Comm'r of Soc. Sec.*, 297 F. Supp. 2d 986, 991 (N.D. Ohio 2003), citing *Green-Younger v. Barnhart*, 335 F.3d 99, 106-07 (2nd Cir. 2003).

[28] *Garner v. Heckler*, 745 F.2d 383, 391 (6th Cir. 1984).

[29] *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001).

[30] *Id.* at 535.

In *Wilson v. Commissioner of Social Security*,[31] the Sixth Circuit discussed the treating source rule in the regulations with particular emphasis on the requirement that the agency "give good reasons" for not affording controlling weight to a treating physician's opinion in the context of a disability determination.[32] The court noted that the regulation expressly contains a "good reasons" requirement.[33] The court stated that to meet this obligation to give good reasons for discounting a treating source's opinion, the ALJ must do the following:

- State that the opinion is not supported by medically acceptable clinical and laboratory techniques or is inconsistent with other evidence in the case record.

- Identify evidence supporting such finding.

- Explain the application of the factors listed in 20 C.F.R. § 404.1527(d)(2) to determine the weight that should be given to the treating source's opinion.[34]

The court went on to hold that the failure to articulate good reasons for discounting the treating source's opinion is not harmless error.[35] It drew a distinction between a regulation that bestows procedural benefits upon a party and one promulgated for the orderly transaction of the agency's business.[36] The former confers a substantial, procedural right on

---

[31] *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541 (6th Cir. 2004).

[32] *Id.* at 544.

[33] *Id.*, citing and quoting 20 C.F.R. § 404.1527(d)(2).

[34] *Id.* at 546.

[35] *Id.*

[36] *Id.*

the party invoking it that cannot be set aside for harmless error.[37] It concluded that the requirement in § 1527(d)(2) for articulation of good reasons for not giving controlling weight to a treating physician's opinion created a substantial right exempt from the harmless error rule.[38]

The Sixth Circuit in *Gayheart v. Commissioner of Social Security*[39] recently emphasized that the regulations require two distinct analyses, applying two separate standards, in assessing the opinions of treating sources.[40] This does not represent a new interpretation of the treating physician rule. Rather it reinforces and underscores what that court had previously said in cases such as *Rogers v. Commissioner of Social Security*,[41] *Blakley v. Commissioner of Social Security*,[42] and *Hensley v. Astrue*.[43]

As explained in *Gayheart*, the ALJ must first consider if the treating source's opinion should receive controlling weight.[44] The opinion must receive controlling weight if (1) well-supported by clinical and laboratory diagnostic techniques and (2) not inconsistent

---

[37] *Id.*

[38] *Id.*

[39] *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365 (6th Cir. 2013).

[40] *Id.* at 375-76.

[41] *Rogers*, 486 F.3d at 242.

[42] *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406-07 (6th Cir. 2009).

[43] *Hensley v. Astrue*, 573 F.3d 263, 266 (6th Cir. 2009).

[44] *Gayheart*, 710 F.3d at 376.

with other substantial evidence in the administrative record.[45] These factors are expressly set out in 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2). Only if the ALJ decides not to give the treating source's opinion controlling weight will the analysis proceed to what weight the opinion should receive based on the factors set forth in 20 C.F.R. §§ 404.1527(d)(2)(i)-(ii), (3)-(6) and §§ 416.927(d)(2)(i)-(ii), (3)-(6).[46] The treating source's non-controlling status notwithstanding, "there remains a presumption, albeit a rebuttable one, that the treating physician is entitled to great deference."[47]

The court in *Gayheart* cautioned against collapsing these two distinct analyses into one.[48] The ALJ in *Gayheart* made no finding as to controlling weight and did not apply the standards for controlling weight set out in the regulation.[49] Rather, the ALJ merely assigned the opinion of the treating physician little weight and explained that finding by the secondary criteria set out in §§ 1527(d)(i)-(ii), (3)-(6) of the regulations,[50] specifically the frequency of the psychiatrist's treatment of the claimant and internal inconsistencies between the opinions

---

[45] *Id.*

[46] *Id.*

[47] *Rogers*, 486 F.3d at 242.

[48] *Gayheart*, 710 F.3d at 376.

[49] *Id.*

[50] *Id.*

-9-

and the treatment reports.[51] The court concluded that the ALJ failed to provide "good reasons" for not giving the treating source's opinion controlling weight.[52]

> But the ALJ did not provide "good reasons" for why Dr. Onady's opinions fail to meet either prong of this test.
>
> To be sure, the ALJ discusses the frequency and nature of Dr. Onady's treatment relationship with Gayheart, as well as alleged internal inconsistencies between the doctor's opinions and portions of her reports. But these factors are properly applied only after the ALJ has determined that a treating-source opinion will not be given controlling weight.[53]

In a nutshell, the *Wilson/Gayheart* line of cases interpreting the Commissioner's regulations recognizes a rebuttable presumption that a treating source's opinion should receive controlling weight.[54] The ALJ must assign specific weight to the opinion of each treating source and, if the weight assigned is not controlling, then give good reasons for not giving those opinions controlling weight.[55] In articulating good reasons for assigning weight other than controlling, the ALJ must do more than state that the opinion of the treating physician disagrees with the opinion of a non-treating physician[56] or that objective medical evidence does not support that opinion.[57]

---

[51] *Id.*

[52] *Id.*

[53] *Id.*

[54] *Rogers*, 486 F.3d 234 at 242.

[55] *Blakley*, 581 F.3d at 406-07.

[56] *Hensley*, 573 F.3d at 266-67.

[57] *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551-52 (6th Cir. 2010).

The failure of an ALJ to follow the procedural rules for assigning weight to the opinions of treating sources and the giving of good reason for the weight assigned denotes a lack of substantial evidence even if the decision of the ALJ may be justified based on the record.[58] The Commissioner's *post hoc* arguments on judicial review are immaterial.[59]

Given the significant implications of a failure to properly articulate (*i.e.*, remand) mandated by the *Wilson* decision, an ALJ should structure the decision to remove any doubt as to the weight given the treating source's opinion and the reasons for assigning such weight. In a single paragraph the ALJ should state what weight he or she assigns to the treating source's opinion and then discuss the evidence of record supporting that assignment. Where the treating source's opinion does not receive controlling weight, the decision must justify the assignment given in light of the factors set out in §§ 1527(d)(1)-(6).

The Sixth Circuit has identified certain breaches of the *Wilson* rules as grounds for reversal and remand:

- the failure to mention and consider the opinion of a treating source,[60]

- the rejection or discounting of the weight of a treating source without assigning weight,[61]

---

[58] *Blakley*, 581 F.3d at 407.

[59] *Wooten v. Astrue*, No. 1:09-cv-981, 2010 WL 184147, at *8 (N.D. Ohio Jan. 14, 2010).

[60] *Blakley*, 581 F.3d at 407-08.

[61] *Id.* at 408.

- the failure to explain how the opinion of a source properly considered as a treating source is weighed (*i.e.*, treating v. examining),[62]

- the elevation of the opinion of a nonexamining source over that of a treating source if the nonexamining source has not reviewed the opinion of the treating source,[63]

- the rejection of the opinion of a treating source because it conflicts with the opinion of another medical source without an explanation of the reason therefor,[64] and;

- the rejection of the opinion of a treating source for inconsistency with other evidence in the record without an explanation of why "the treating physician's conclusion gets the short end of the stick."[65]

The Sixth Circuit in *Blakley*[66] expressed skepticism as to the Commissioner's argument that the error should be viewed as harmless since substantial evidence exists to support the ultimate finding.[67] Specifically, *Blakley* concluded that "even if we were to agree that substantial evidence supports the ALJ's weighing of each of these doctors' opinions, substantial evidence alone does not excuse non-compliance with 20 C.F.R. § 404.1527(d)(2) as harmless error."[68]

---

[62] *Id.*

[63] *Id.* at 409.

[64] *Hensley*, 573 F.3d at 266-67.

[65] *Friend*, 375 F. App'x at 551-52.

[66] *Blakley*, 581 F.3d 399.

[67] *Id.* at 409-10.

[68] *Id.* at 410.

In *Cole v. Astrue*,[69] the Sixth Circuit reemphasized that harmless error sufficient to excuse the breach of the treating source rule only exists if the opinion it issues is so patently deficient as to make it incredible, if the Commissioner implicitly adopts the source's opinion or makes findings consistent with it, or if the goal of the treating source regulation is satisfied despite non-compliance.[70]

**B.     Application of standards**

As noted, this matter presents two related issues for decision that together involve consideration of whether treatment notes of Gregory's treating neurologist should have supported a finding that Gregory's lower back pain was a severe impairment at Step Two or required the inclusion of additional limitations in the RFC at Step Four.

The record shows that Gregory began treatment with Dr. Deepak Raheja, M.D., a neurologist, in May 2012.[71] In the early examinations, during which Gregory complained about anxiety, headaches and insomnia, Dr. Raheja noted mostly normal physical findings, diagnosed Gregory with ADD, anxiety and depression, and prescribed Ambien and an antidepressant.[72]

---

[69] *Cole v. Astrue*, 661 F.3d 931 (6th Cir. 2011).

[70] *Id.* at 940.

[71] Tr. at 670.

[72] *Id*. at 670, 672, 699.

Gregory continued to see Dr. Raheja throughout 2012-2014.[73] During 2013, Gregory began to complain of fatigue and difficulty focusing.[74] In September 2013, Dr. Raheja completed a psychological assessment of Gregory's functioning, which concluded, among other things, that in most areas of functioning Gregory would only rarely be able to function.[75] In October 2013 Gregory returned to Dr. Raheja complaining of pain and parasthesias in both hand, with weakness, which he alleged was made worse with activity.[76] Dr. Raheja then performed an EMG/NCV study which revealed bilateral median neuropathy - carpal tunnel syndrome - at the wrists.[77] Dr. Raheja diagnosed carpal tunnel syndrome and as well as bipolar disorder.[78]

On a visit to Dr. Raheja in August 2015, Gregory continued to complain of pain and parethesias in his hands, along with weakness.[79] Dr. Raheja ordered another EMG/NCV test, which confirmed the results of the first test.[80] On the next visit, September 9, 2015,

---

[73] *Id*. at 648-65.

[74] *Id*. at 659, 657, 659, 665.

[75] *Id*. at 633-34.

[76] *Id*. at 652.

[77] *Id*. at 653-54.

[78] *Id*. at 652-54.

[79] *Id*. at 729.

[80] *Id.* at 731.

Gregory noted continued anxiety and stated that Xanax was not helping.[81] Then he also complained of low back pain, which he said radiated to his lower extremities.[82] Dr. Raheja diagnosed "lumbosacral neuritis,"prescribed the use of a back brace and increased the dosage of Neurontin, a drug used to treat nerve pain.[83]

On a follow-up visit the next month, Gregory continued to complain of low back pain, which he rated at 6-7 on a pain scale of 10.[84] Dr. Raheja conducted an examination which found that Gregory exhibited decreased lumbar range of motion and tenderness to palpitation along the lumbar spine.[85]

Gregory continued to complain of low back pain - rating the pain 6 out of 10 - at the next visit to Dr. Raheja on December 30, 2015, again rating the pain at 6 out of 10, and stating that he was experiencing pain in his lower extremities.[86] That said, an EMG of Gregory's lower extremities was normal.[87] At a visit on January 29, 2016, Gregory again complained of low back pain at a level of 6 out of 10.[88]

---

[81] *Id*. at 727.

[82] *Id*.

[83] *Id*.

[84] *Id*. at 725.

[85] *Id*.

[86] *Id*. at 717.

[87] *Id*.

[88] *Id*. at 744.

Here, Gregory contends that the ALJ erred by failing to find that his low back pain was a severe impairment.[89] As reflected in the opinion, the ALJ did consider the question of whether the low back pain was a severe impairment, but concluded that because Dr. Raheda's examination findings were essentially normal, the impairment was not severe.[90]

Gregory argues that this reason ignores the other examination findings that there was decreased range of motion of the lumbar spine and that the lumbar spine was tender to palpitation.[91] Gregory further maintains that the severity of his lower back pain and its interference with work related activities was documented in his own testimony, as well as in the frequency of his complaints to Dr. Raheja.[92]

But, as the Commissioner observes, at the same examination where decreased range of motion was documented, it was also documented that Gregory had normal gait and station, could tandem walk, and that he had normal reflexes.[93] The Commissioner further observes that the complaints of low back pain at a level of 6 out of 10 continued for a number of years without any further notes of any increase in severity or of disabling consequences from that pain.

---

[89] ECF # 21 at 17-19.

[90] Tr. at 117.

[91] ECF# 21 at 18 (citing record).

[92] *Id.* (citing record).

[93] See, tr. at 717.

In sum, it is clear that the ALJ considered Gregory's lower back pain at Step Two but did not find enough evidence to assess it as severe. While it is true that the standard at Step Two is considered a "*de minimis* hurdle" designed to weed out "totally groundless claims,"[94] it is also true that, as here, any error in failing to find an impairment to be severe at Step Two is not reversible error if the impairment is considered later in the sequential evaluation.[95]

The issue here is that any later direct consideration of low back pain as an impairment was shaped by the ALJ's decisions to give only little weight to Dr. Raheja's functional opinion[96] and to find Gregory's complaints of pain "generally not consistent with the objective diagnostic evidence and the examination findings of his treating neurologist, Dr. Raheja."[97]

As to the matter of giving lessened credibility to Gregory's subjective complaints, the ALJ's reasons, among others, were:

(1) dissimilarity between Gregory's statement at the hearing that he was unable to pick up a coffee cup, and an objective nerve conduction study that showed only mildly severe neuropathy of the wrist;

(2) motor strength on examination of 5/5 in all extremities;

(3) deep tendon reflexes were +2/4 and equal bilaterally; and

---

[94] *Nejat v. Comm'r of Soc. Sec.*, 359 Fed. Appx. 574, 577 (6th Cir. 2009)(internal quotation and citations omitted).

[95] *Id.*

[96] Tr. at 125.

[97] *Id.* at 121.

(4)  manual muscle tests were normal.[98]

Further, the ALJ contrasted Gregory's complaints with Dr. Raheja's "psychiatric and physical examinations," which the ALJ described as "essentially normal."[99]

While Gregory questions if any physical examination that showed reduced range of motion and sensitivity to touch can be termed "normal,"[100] my review of the ALJ's decision here, and as it concerns Dr. Raheja's opinion, is that he found insufficient evidence beyond the subjective complaints and the examination findings cited above to fully credit the statements as to the severity and functional limitations of the low back pain.

Moreover, to the extent the ALJ's comment about normal findings is meant as a reference to the electromyogram and nerve conduction study done of the lower extremities in December 2015 by Dr. Raheja at the same time as he detected the reduced range of motion, this study did yield essentially normal results, with no evidence of axonal denervating or segmentally demyelinating lesions.[101]

In specific connection with the functional opinion of Dr. Raheja, it is noted that the ALJ gave that opinion "partial weight," at least insofar as that opinion was consistent with

---

[98] *Id.*

[99] *Id.*

[100] See, ECF # 21 at 18.

[101] Tr. at 123-24.

the RFC.¹⁰² Again, the ALJ cited the essential normal nature of Gregory's examination as a reason for this assignment of weight.¹⁰³

In sum, although the ALJ's analysis and discussion of the particular issue of Gregory's low back impairment was not ideal, I find that the reasons given for not including it as a severe impairment at Step Two and for not more fully crediting either Gregory's testimony or Dr. Raheda's opinion are capable of meaningful judicial review, and that the reasons are supported by substantial evidence in the record.

## Conclusion

Accordingly, and for the reasons stated, I find that the decision of the Commissioner to deny disability benefits to Christian Gregory is supported by substantial evidence, and so affirm that decision.

IT IS SO ORDERED.

Dated: March 29, 2018                    s/ William H. Baughman, Jr.
                                         United States Magistrate Judge

---

¹⁰² *Id*. at 126.

¹⁰³ *Id*.